## Elias Hoisington *vs.* Elijah Hoisington.

The question of implied notice of the existence of a prior conveyance of land, from the fact of there being a deed on record, can be carried no further than where the statute places it—The recording, therefore, of an unacknowledged deed, can have no other effect than the temporary effect which the statute has given it.

The covenantor, having previously executed to his mother a life lease of the estate, to take effect upon failure of his otherwise affording her a support in his family, and as a member of it, which was recorded, but never acknowledged :—In an action of covenant broken—*held*, that the mother could not enforce the lease against the covenantee, without showing actual knowledge in him of its existence, at the time of his taking the deed ; and, that knowledge could be *implied* neither from the fact of the record, or the fact of the mother's residing on the premises with the covenantor, that having previously been her ordinary residence—and consequently, that the covenantor had not therein broken his covenant.

THIS was an action of covenant broken. The case, by the agreement of the parties, was, under a rule of Court, submitted to referees, who made a special report, in substance, as follows :—

That the defendant did, at the time mentioned in the plaintiff's declaration, execute and deliver to the plaintiff a proper deed of the land and tenement therein described, and that said deed did contain all the covenants in said declaration set forth ;—that the plaintiff hath from that time hitherto continued in the possession and occupancy of said premises under said deed ;—that before the execution of said deed, to wit, on the 25th day of January, 1811, the defendant, and one *Oliver Hoisington*, being then the owners in common of said premises, leased the same to their mother, then *Mary Hoisington*, widow, who is also the mother of the plaintiff, to have and to hold, *during the time of her natural life ;*—that, to the said lease there was annexed the following memorandum, or condition, viz. "The true intent and

meaning of all parties to the above written lease, or instrument, is, that the said *Elijah Hoisington* and *Oliver Hoisington* are to improve and carry on the above leased possessions, in all things the same as though the said lease had not been executed. All the parties to the said lease, are to live in and occupy the dwelling-house, and all other buildings, generally and in common, and to live together as one common family, having one common interest, each one to do all in their power to promote the interests of the same. All debts due to the estate of the said *Elias Hoisington,* deceased, (the late husband of the lessee) to be collected and applied to the. common interest, and all debts due from the estate to be paid out of the interest generally. The said *Elijah* and *Oliver* hereby covenanting and agreeing, in a particular manner, at all times hereafter, to furnish the said *Mary,* under all circumstances, both in sickness and in health, with a comfortable support and maintenance, during her natural life----not by furnishing her with any specifick articles, but generally all things which may be considered as necessary to furnish her with, to make a person of her age and circumstances comfortable, during her natural life, as aforesaid.

[Here follows a covenant, which was fully executed, and is immaterial in this cause.]

And the said *Elijah* and *Oliver* further covenant and agree with the said *Mary,* that whenever they, their heirs, executors, or administrators, shall fail of complying with all and singular the several articles enumerated in the foregoing memorandum, or any of them, then the foregoing lease to be in full force."---- Which said lease and condition, was duly signed and sealed, by the said *Elijah, Oliver,* and *Mary,* witnessed by two witnesses, and recorded at length in the Windsor town. clerk's office, on the 4th day of February, 1811. But the said lease was never *acknowledged* by either of the parties to the same, before any magistrate, or certified to be so done.

That some time after the said execution of said lease, the said *Mary* was married to one *Bryant,* and went to reside with him ----the said *Bryant* being a man of property.

That thereafterward, for causes not within the control of either of these parties, she left the dwelling-house of the said *Bryant,* and returned to Windsor; and in the month of April, 1823, she came to the house of the plaintiff on said premises, and claimed her support there, threatening to inforce the said lease against him, if it was not so furnished----that the plaintiff thereupon took her into his house, and furnished her a support as she needed----where she has ever since, and still does reside; ----That the defendant or the said *Oliver* have not, during that period, furnished the said *Mary* a support, nor paid the plaintiff for the same.----That the said *Mary* is a woman of good constitution, in good health, and is now sixty-two years and an half of age.

And it is agreed by the said parties, that the annual value of the said premises is fully equal to the annual support of the said

Windsor,
February,
1827.

Hoisington
vs:
Hoisington:

*Mary*, and that if the plaintiff is entitled to recover, the value of her support, so long as the defendant is liable to the plaintiff for the same, from the facts aforesaid, shall be the measure of damages, in lieu of the value of the premises, for the same period ;----that the existence of the aforesaid lease, and the conduct of the said *Mary* in relation thereto, and her support as above detailed, constitutes the breach of the defendant's covenants in his deed, of which the plaintiff complains.

Whereupon the referees do decide and report, that if the said lease is not a good and subsisting lease, valid in the law, so that the said *Mary* cannot enforce the same against third persons in the possession of said premises, the defendant hath not broken his said covenants, or either of them, but hath kept the same, and is entitled to judgment against the plaintiff, for his costs. But if the said lease is a good and subsisting lease, valid in the law, so that the said *Mary* can enforce the same against third persons in the possession of the premises, then the said referees say that the same did become of force, for that purpose, in the month of April, 1823, and that the defendant hath not kept his covenant against incumbrances in his said deed contained, but hath broken the same ; and that the plaintiff is entitled to judgment for his damages and costs.----In which latter case, the referees further decide that, &c.

The following fact, not distinctly stated in the report, was agreed on by the parties, and attached to the report, as a part thereof. "That after the execution of said lease, the said *Mary* resided on the premises with the said *Elijah*, till her intermarriage with said *Bryant*; that after residing with said *Bryant* about a year or so, she left him, and returned to the house of the said *Elijah*, on said premises, and continued to make her home there, till the execution of the deed from *Elijah* to *Elias*, of the premises.

After argument by counsel, the opinion of the Court was pronounced by

HUTCHINSON, J. This is an action of covenant broken ; and the breach assigned is, the outstanding lease of *Elijah* and *Oliver*, to *Mary*, their mother. The subject has been referred to indifferent men, who have made a special report of the facts shown and agreed upon by the parties, and this Court are now called upon to announce the law arising from those facts.

The principal question to be decided is, whether that which is relied upon as a breach of the covenant, is such, in a legal point of view ? This involves the question, whether the plaintiff, when he received his deed containing the covenants in question, had such knowledge of the lease as will now prevent his holding the premises against the lessee ? This knowledge must be derived from the recording, at full length, of the unacknowledged lease ; or knowledge in fact must be proved. The Court consider the record not such, that the plaintiff is obliged, at his peril, to take notice of it. The statute upon this subject, (see page 167,) provides, "that all deeds of lands lying in this

*Windsor,*
February
1827:

Hoisington
*vs:*
Hoisington:

state, signed and sealed by the person granting the same, and having good and lawful authority thereto, and signed by two or more witnesses, and acknowledged by such grantor or grantors, before a justice of the peace, and recorded, at length, in the clerk's office of the town in which such lands, &c. lie, shall be valid to pass the same, without any other act or ceremony in law whatever." This may all exist, and yet a purchaser be ignorant of a deed thus recorded. But, because every person may know, if he will be careful to search where the law requires notice to be, he must not avail himself of actual ignorance of a deed thus executed and recorded: but he will be presumed to know, and treated as knowing of such deed. So on page 168, provision is made for the recording of an unacknowledged deed, otherwise regularly executed, and makes that sufficient notice to purchasers and levying creditors, for the space of sixty days from the time of recording, and from thence until the final determination of a process to compel an acknowledgement. This last provision implies, that the recording would have no effect without the aid of this part of the statute.

The question of implied notice, regulated by statute, can be carried no further than where the statute places it: and this lease, when recorded, was too incomplete to attach any effect to its being recorded.

When knowledge in fact of a former deed is relied upon, to show a fraud in procuring or receiving one of a later date, such a record, with proof that it was seen by the last grantor, may be proper testimony in showing such fraud; just as would be an oral communication that such a deed existed. But there seems to be no intimation in this case of any notice in fact of the lease, unless the same were to be implied from the widow's continuing in possession, according to the doctrine in the case of *Marshall* vs. *Fiske*, cited from the 6th of *Mass. R. p.* 24.

The Court consider that this case does not at all compare with that, nor furnish any such grounds of constructive notice. This lease is of a peculiar character. It is executed mutually by the mother and her two sons, of whom the defendant was one; and, by its own terms, it was to have no effect to give the lessee a right of possession, until the failure of the two sons to furnish a certain general support; which failure might never happen. In the mean time, it was to operate as a mutual agreement of the three, to live together in the house and on the premises, enjoying and promoting one common interest of the three. There is no evidence that it had become operative to convey the right of possession when the plaintiff took his deed from *Elijah*. This possession of the widow, in conjunction with *Elijah*, the present defendant, he managing the farm as his own, furnished no evidence or presumption inconsistent with his right to hold and sell the premises. His deed, therefore, did convey the premises to the plaintiff, and the plaintiff can hold the same against the lease. And his complaint of a breach of the covenant is without foundation. The remedy of the moth-

ur, for her support, must not be an entry under the lease, but a <span style="float:right">*Windsor,* February, 1827.</span>
claim upon the covenants in the lease.

       The entry to be made is, that the report be accepted, Hoisington
       and judgment thereon be rendered in favour of the *vs:* Hoisington:
       defendant.

*Thomas Leland,* counsel for the plaintiff.

*Carlos Coolidge,* counsel for the defendant.